OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone:  213-239-9800
Facsimile:   213-239-9045

Attorneys for Defendant SF Markets, LLC
(erroneously sued as Sprouts Farmers Market, Inc.)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| AMBER GILLES, | Case No. 3:20-cv-02131-GPC-JLB |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)** |
| SPROUTS FARMERS MARKET, INC. AND DOES 1 THROUGH 20, INCLUSIVE, | |
| Defendants. | [*Filed concurrently with Notice of Motion and Motion to Dismiss and Request for Judicial Notice*] |
| | Date:        May 14, 2021 |
| | Time:       1:30 p.m. |
| | Place:       Courtroom 2D, 2nd Floor |
| | Complaint Filed:  October 30, 2020 |
| | Trial Date:        None |
| | District Judge:    Hon. Gonzalo P. Curiel |
| | Courtroom 2D, Schwartz |
| | Magistrate Judge: Hon. Jill L. Burkhardt |
| | Courtroom Suite 5140, Schwartz |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................. 1

II.  FACTUAL BACKGROUND ................................................ 2

    A.  Sprouts and Its Face Covering Policy ........................... 2

    B.  Plaintiff's Claim ............................................................ 4

III.  STANDARD OF REVIEW ................................................ 4

IV.  THE CLAIM SHOULD BE DISMISSED BECAUSE
PLAINTIFF'S ALLEGATIONS, EVEN TAKEN AS TRUE,
DO NOT CONSTITUTE A VIOLATION OF THE ADA OR
UNRUH ACT ...................................................................... 5

    A.  Plaintiff Fails To Allege A *Prima Facie* Case of Disability
Discrimination. .............................................................. 6

    B.  Sprouts' Eligibility Criteria Are Neutral And Necessary
For The Safe Operation Of Its Stores. ........................... 8

    C.  Sprouts Offers Several Reasonable Modifications Of
Practices, Policies, And Procedures And Auxiliary Aids
And Services To Accommodate Individuals Who Cannot
Wear A Face Covering Due To A Disability. ................ 12

    D.  Allowing An Individual Entry Into Sprouts Without A
Face Covering Poses A Direct Threat To The Safety Of
Both That Individual And Other Individuals In The Store. ......... 14

V.  PLAINTIFF'S RETALIATION CLAIMS SHOULD BE
DISMISSED FOR THE SAME REASONS  HER ADA
DISCRIMINATION CLAIMS SHOULD BE DISMISSED. ............... 16

VI.  PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE
DISMISSED BECAUSE SHE WAS NOT FORCED TO WEAR
A MASK .............................................................................. 16

VII.  CONCLUSION ................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ........................................................................................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 5, 6

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) .......................................................................................... 15

*Conley v. Gibson*,
    355 U.S. 41 (1957) .............................................................................................. 4

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,
    603 F.3d 666 (9th Cir. 2010) .............................................................................. 6

*Hickey v. O'Bannon*,
    287 F.3d 656 (7th Cir. 2002) .............................................................................. 5

*Judice v. Hosp. Serv. Dist. No. 1*,
    919 F. Supp. 978 (E.D. La. 1996) ...................................................................... 9

*Larsen v. Carnival Corp. Inc.*,
    242 F. Supp. 2d 1333 (S.D. Fl. 2003) ................................................................ 9

*Miller v. California Speedway Corp.*,
    536 F.3d 1020 (9th Cir. 2008) ............................................................................ 5

*Pletcher v. Giant Eagle Inc.*,
    No. 2:20-754, 2020 WL 6263916 (W.D. Pa. Oct. 23, 2020) ........................ 13, 14

*Spector v. Norwegian Cruise Line Ltd.*,
    545 U.S. 119 (2005) ............................................................................................ 8

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

46617647_1.docx

*Winebarger v. Pennsylvania Higher Education Assistance Agency*,
411 F. Supp. 3d 1070 (S.D. Cal. 2019) .................................................. 17

**Federal Statutes**

28 U.S.C.
§ 12182(b)(2)(A)(i) .............................................................................. 8

42 U.S.C.
§ 12101(b)(2) ....................................................................................... 5
§ 12181(b)(2)(A)(iii) .......................................................................... 13
§ 12182(a) ............................................................................................. 5
§ 12182(b) ............................................................................................. 5
§ 12182(b)(2)(A)(i) ........................................................................ 8, 11
§ 12182(b)(2)(A)(ii) ....................................................................... 3, 12
§ 12182(b)(2)(A)(iii) ...................................................................... 3, 12
§ 12182(b)(3) ...................................................................................... 14
§ 12186(b)-(c) ...................................................................................... 5

**Other Authorities**

28 C.F.R. § 36.208 .......................................................................... 3, 14

28 C.F.R. § 36.301(a) ........................................................................... 8

28 C.F.R. § 36.301(b) ........................................................................... 8

56 Fed. Reg. 35544 (July 26, 1991) ..................................................... 8

*CDC calls on Americans to wear masks to prevent COVID-19 spread*,
July 14, 2020, https://www.cdc.gov/media/releases/2020/p0714-
americans-to-wear-masks.html ........................................................ 10

DOJ *Tech. Ass. Manual* § III-3.8000 ................................................ 14

DOJ *Tech. Ass. Manual* § III-4.1200 .................................................. 8

*Face Coverings,* California Department of Public Health (November 16,
2020),
https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-
19/guidance-for-face-coverings.aspx ......................................... 10, 13

Fed. R. Civ. P. 8 .............................................................................. 6, 7

46617647_1.docx

Fed. R. Civ. P. 12(b)(6) ................................................................................ 4

*Guidance for the Use of Face Coverings*, California Department of
    Public Health (June 18, 2020),
    https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Docume
    nt%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-
    2020.pdf ...................................................................................... 10, 13

https://nypost.com/2020/07/15/starbucks-karen-wants-half-of-
    donations-for-barista-who-didnt-serve-her/) .......................................... 7

https://timesofsandiego.com/life/2020/08/06/burn-your-mask-bonfire-
    set-by-anti-masker-amber-gilles-of-starbucks-clash/ ............................. 7

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-
    face-cover-guidance.html ....................................................................... 9

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/mask-
    fit-and-filtration.html ........................................................................... 10

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/mask-
    fit-and-filtration.html#choosing-a-mask ............................................. 10

https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/E
    pidemiology/covid19/covid19PHOrders/PUBLIC_HEALTH_ORDE
    R_EFFECTIVE_DATE_05.01.20_EXECUTED_DATE_04.30.20.p
    df ........................................................................................................ 11

Mar. 2, 2021 Tex. Exec. Order GA 34, ¶¶ 4 ...................................... 11

Order of the Health Officer and Emergency Regulations (Effective May
    1, 2020, but since superceded), ¶ 9 ..................................................... 11

Order of the Health Officer and Emergency Regulations (Effective
    February 6, 2021),
    https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/ph
    s/Epidemiology/HealthOfficerOrderCOVID19.pdf ............................. 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

46617647_1.docx

Order of the Health Officer and Emergency Regulations (Effective July 30, 2020),https://www.sandiegocounty.gov/content/dam/sdc/hhsa/progra ms/phs/Epidemiology/covid19/covid19PHOrders/PUBLIC_HEALT H_ORDER_EFFECTIVE_DATE_07.30.20_EXECUTED_DATE_0 7.29.20.pdf .................................................................................................. 11

Orders of the Health Officer and Emergency Regulations is available at https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/co mmunity/epidemiology/dc/2019-nCoV/health-order.html ................................... 11

*Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2,* November 20, 2020, https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html .......................................................................................................... 9

*These Are The States Requiring People To Wear Masks When Out In Public*, CNN.com (November 5, 2020), https://www.cnn.com/2020/06/19/us/states-face-mask-coronavirus-trnd/index.html ...................................................................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)

46617647_1.docx

# I.     **INTRODUCTION**

Plaintiff Amber Gilles ("Plaintiff") seeks damages and injunctive relief challenging the neutral safety requirements that defendant SF Markets, LLC ("Sprouts," erroneously sued as "Sprouts Farmers Market, Inc.") imposed when it required its customers to wear a face covering, or if their disability prevented that, a face shield.  Plaintiff alleges that Sprouts violated the Americans with Disabilities Act ("ADA") and California common law of negligence by prohibiting her from personally shopping inside an unidentified Sprouts market somewhere within this judicial district because she refused to wear a face covering and that Sprouts' curbside pickup option was insufficient to comply with those laws.  Plaintiff fails to sufficiently plead that she has a disability, let alone what that disability is; nor does she allege that (or how) her putative disability prevented her from wearing *either* a face covering or a face shield.  Indeed, Plaintiff entirely fails to allege that she could not wear a face shield, which would have permitted her full access to any Sprouts store.  For these reasons, coupled with the facial legality of Sprouts' no-exception, face-covering policy, Plaintiff's claims should be dismissed.

Plaintiff brings this lawsuit in the middle of the global COVID-19 pandemic ("COVID-19"), where there is still no cure or fully effective treatment for the disease, or vaccine that is fully available to vast segments of the population.  Medical experts and governmental officials across the country have agreed that individuals should wear face coverings when outside of their homes to stop the spread of COVID-19, which has been amply demonstrated to be deadly in more than 543,000 cases (and counting) and producing lasting and still-unknown health consequences in millions of additional cases.  As a result, Plaintiff's claims, even if taken as true, do not constitute a violation of the ADA or state negligence laws.  Specifically, Plaintiff's understood claim that Sprouts imposes an exclusionary eligibility requirement fails because a face covering policy is "necessary" to safely operate Sprouts' stores during COVID-19.  Further, the ADA permits Sprouts to prohibit

entry to Plaintiff—or any individual—if she does not or cannot wear a face covering, because entry without a face covering poses a "direct threat" to the health and safety of everyone else in the store.  Moreover, the explicit language of Sprouts' policy (Request for Judicial Notice ("RJN") ¶ 1, Ex. 1) permits a "reasonable modification" of its policy by allowing those who cannot wear a face covering to shop while wearing a face shield.  Furthermore, Sprouts offers auxiliary aids and services for disabled individuals who cannot wear a face covering or face shield by providing three viable alternatives to provide Sprouts' core offering -- groceries.  Plaintiff's retaliation claims similarly fail because Sprouts' lawful act of excluding Plaintiff (or requiring her to take advantage of one of the accommodations offered by Sprouts pursuant to its face-covering policy) cannot also constitute unlawful retaliation. Nor can such lawful acts constitute negligence, which negates Plaintiff's negligence claims.

Accordingly, Defendant requests that this Court dismiss Plaintiff's claims for relief in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   FACTUAL BACKGROUND

### A.   Sprouts and Its Face Covering Policy

Sprouts is a supermarket chain headquartered in Phoenix, Arizona that offers a wide selection of natural and organic foods, including fresh produce, bulk foods, vitamins and supplements, packaged groceries, meat and seafood, deli, baked goods, dairy products, frozen foods, and natural body care and household items.  Sprouts employs more than 35,000 workers and operates more than 340 stores in 23 states.

During the global COVID-19 pandemic that has killed over a million people around the world and over 543,000 people in the United States, Sprouts has remained open to provide healthy and nutritious groceries to local communities in a safe and responsible manner.  In doing so, Sprouts has a duty to keep its customers and employees safe.  When the pandemic began to appear in March 2020, and continued

46617647_1.docx

1    to rise at an alarming rate in the ensuing months, customers and employees alike

2    demanded more action from Sprouts.

3        As part of its efforts to protect the health and safety of its employees and

4    customers during the ongoing pandemic, Sprouts developed and implemented a

5    customer face covering policy ("Face Covering Policy").  (*See* RJN ¶ 1 Ex. 1.)  The

6    Face Covering Policy requires *all* individuals who enter Sprouts stores to wear a face

7    covering.  As the policy states, it is based on "recommendations from health officials

8    and public health agencies regarding the use of face coverings to help prevent the

9    spread of COVID-19."  (*Id.*)  Notably, the Face Covering Policy also states that:

10   "Although we encourage our guests to wear face coverings in accordance with public

11   health recommendations, we are also allowing face shields in our stores."  (*Id.*)

12       Sprouts also retained an infectious disease expert to analyze and affirm that its

13   Face Covering Policy properly addresses the very real "direct threat" presented by

14   COVID-19.  For individuals with disabilities, Sprouts determined both that the

15   "eligibility criterion" of being able to wear a mask was "necessary" to the operation

16   of Sprouts' stores within the meaning of 42 U.S.C. § 12182(b)(2)(A)(i), and

17   furthermore, after conducting a "direct threat" analysis under 28 C.F.R. § 36.208,

18   determined that the information provided by multiple public health agencies and its

19   retained expert meant that allowing individuals to enter its stores without a face

20   covering would result in a direct threat to Sprouts' employees and customers.

21   Accordingly, Sprouts met its further obligations to make reasonable modifications to

22   its policies, practices, and procedures (42 U.S.C. §12182(b)(2)(A)(ii)) by  allowing

23   its customers to wear a face shield instead of a face covering, and its obligations to

24   provide auxiliary aids and services (42 U.S.C. § 12182(b)(2)(A)(iii)) by allowing

25   customers with disabilities an equal opportunity to benefit from the goods and

26   services Sprouts provides by providing, free of charge, (1)  a Sprouts team member

27   to personally shop for the customer; and (2) allowing customers to shop for groceries

28   online with free curbside pickup or delivery.  (*See* RJN ¶ 1, Ex. 1.)

3                                    Case No. 3:20-cv-02131-GPC-JLB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(B)(6)

46617647_1.docx

## B.   Plaintiff's Claim

On October 30, 2020, Plaintiff filed her Complaint (the "Complaint") against Defendant in the United States District Court for the Southern District of California. (Complaint, ECF No. 1.)  Specifically, Plaintiff alleges in relevant part that during an August 6, 2020 to an unidentified Sprouts store located somewhere within the Southern District of California, Sprouts denied Plaintiff entry to that (unidentified) store, and was ordered to leave.  (ECF No. 1, ¶¶ 3, 12.)  Plaintiff further alleged she was not offered the opportunity to have a Sprouts employee shop for her and that an unidentified Sprouts employee threatened to call the police if Plaintiff did not leave the premises.  *Id.*  Plaintiff alleges that Sprouts' employee shopping or curbside pickup and delivery services deny disabled customers full and equal access to Sprouts' stores and accordingly do not comply with the ADA.  (ECF No. 1, ¶ 16.) In her Complaint, Plaintiff appears to seek (1) "injunctive relief requiring Defendant to accommodated [*sic*] Plaintiff by modifying its policies and procedures" to allow Plaintiff to shop in Sprouts' stores without wearing a face covering; (2) injunctive relief prohibiting Sprouts from retaliating against Plaintiff; (3) vaguely alleged damages related to Plaintiff's negligence claims; and (4) attorneys' fees. (*Id.*  ¶¶ 34, 39, 43.)

It is equally notable what Plaintiff does **not** allege, including a fatal failure to allege:  (1) what her putative disability is; (2) how her putative disability may prevent her from wearing a face covering or face shield; (3) that she cannot wear a face shield as a result of his putative disability; or (4) how the personal shopper/delivery option provides an unequal experience.

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss is proper where, as here, the moving party demonstrates that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must

take the complaint's well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). Yet, "the tenet that a Court must accept as true all of the allegations contained in a Complaint is inapplicable to legal conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, to avoid dismissal at the pleading stage, the complaint must contain factual allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

## IV. THE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S ALLEGATIONS, EVEN TAKEN AS TRUE, DO NOT CONSTITUTE A VIOLATION OF THE ADA OR UNRUH ACT

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Consistent with this goal, Congress directed the Department of Justice ("DOJ") to "issue regulations . . . that include standards applicable to facilities" covered under Title III—*i.e.*, places of public accommodations…." 42 U.S.C. § 12186(b)-(c); *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1024 (9th Cir. 2008). Title III begins with a general rule that prohibits discrimination against any individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a); *Miller*, 536 F.3d at 1024. Since the term "discrimination" is not directly defined in Title III, the statute provides several "general prohibitions" and "specific prohibitions" that constitute discrimination for purposes of the ADA. 42 U.S.C. § 12182(b). In addition, the DOJ issued specific regulations found at 28 C.F.R. Part 36 to implement Title III.

Plaintiff contends that Defendant refused to allow her to shop in the Store without a mask and that Sprouts' curbside pickup alternative is insufficient under the

ADA.  (ECF No. 1, ¶¶ 12, 16.)  Read charitably in the context of the statute, these allegations sound most analogous to claims that:  (1) Defendant imposed an eligibility criteria (the Face Covering Policy) that denies equal access to persons with disabilities in violation of 42 U.S.C. § 12182(b)(2)(A)(i); and (2) Defendant's refusal to permit Plaintiff to shop at the Store without a face covering constitutes a failure to make reasonable modifications of its policies, practices, or procedures.  As addressed below, Plaintiff's claims for relief under these theories fail.  But first, Plaintiff's Complaint is doomed by its failure to sufficiently plead that she has a disability or that that disability prevented her from wearing a face covering *or* face shield.

## A.      Plaintiff Fails To Allege A *Prima Facie* Case of Disability Discrimination.

It is axiomatic that an ADA claimant must allege a "disability" within the meaning of the ADA and that she faced discrimination on the basis of *that* disability. *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  Plaintiff does not meet these most basic requirements.  First, Plaintiff offers only a conclusory allegation that she is "a person with a disability" who has several health conditions that substantially limit a major life activity of breathing and her respiratory and nervous systems.  (Complaint, ECF No. 1, ¶ 7.) Plaintiff does not identify what her disability is, or identify how that disability prevents her from complying with Sprouts' policy, aside from a vague and conclusory allegation that she experiences shortness of breath when she wears a mask or face covering.  (*Id.*)  Plaintiff's failure to properly allege and identify her disability is fatal to her claims.  Fed. R. Civ. P. 8; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a formulaic recitation of the elements of a cause of action will not do"); *Ashcroft v. Iqbal*, 556 U.S. 662, 668-669 (2009) (holding that (1) courts need not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" and (2)

only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss.).

The Ninth Circuit recently applied these well-established principles to conclusory allegations of an ADA Title III claim about inaccessible sales counters to uphold the dismissal of the action. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (affirming dismissal on Rule 12(b)(6) motion complaint that contained "primarily legal conclusions" about inaccessible sales counters, which left "the district court and Tesla [] in the dark about how the service counters denied Whitaker from full and equal enjoyment of the premises."). As in *Whitaker*, the Plaintiff pleads that she has a disability entitling her to coverage under Title III and that that disability prevents her from wearing a mask, but it leaves the Court and Sprouts in the dark about what her disability is and *how* it prevents her from wearing either a mask or a face shield. For the reasons stated in *Whitaker* and the Supreme Court cases on which it relies, Plaintiff should be made to meet her obligations under Rule 8.[1]

_____

[1] Requiring this Plaintiff to fully plead each element of her claim is no idle exercise. Given Plaintiff's quasi-celebrity in protesting mask issues, it is not surprising that she is volubly vague on her alleged "disability" that arguably invokes protection under the ADA. Plaintiff's name and likeness first gained widespread media attention as the anti-masker who filmed a Starbucks *barista* refusing to provide her service if she remained maskless. (RJN ¶¶ 2-3, Ex. 2 & 3.) She posted to Facebook around that time that the *barista* refused to serve her because she was maskless. She says "[n]ext time … I will wait for cops and bring a medical exemption." (RJN ¶ 2, Ex. 2.) She has since filed suit, not for discrimination for denial of service, but against the individual who started a GoFundMe campaign for the *barista*, claiming a misappropriation of her name and likeness and similar claims. (Complaint in *Amber Lynn Gilles v. Matthew Cowan, et al.*, Cal. S. Ct., San Diego Cty. Case No. 37-2021-00008108-CU-DF-CTL. (RJN ¶ 4, Ex. 4; https://nypost.com/2020/07/15/starbucks-karen-smash-half-of-donations-for-barista-who-didnt-serve-her/).) Similarly, Plaintiff's leadership role in organizing a "Burn Your Mask Bonfire" in Mission Bay, California, suggests that Plaintiff may have been motivated more by a political and/or a "personal freedom" agenda than by her putative disability. (https://timesofsandiego.com/life/2020/08/06/burn-your-mask-bonfire-set-by-anti-masker-amber-gilles-of-starbucks-clash/, RJN ¶ 5, Ex. 5.)

In this case as well, Plaintiff delayed 110 days before serving the Complaint, instead running to the media to trumpet her case and falsely claim that she was vigorously prosecuting the case. (RJN ¶¶ 6-7, Ex. 6; *see also* Sprouts' motion to

**B.     Sprouts' Eligibility Criteria Are Neutral And Necessary For The Safe Operation Of Its Stores.**

Even assuming that Plaintiff can surpass these basic shortcomings in her pleading, the Claim likewise fails on its merits for several reasons.  Reading the Claim charitably, Plaintiff appears to assert that Sprouts applies eligibility criteria that screen out individuals with a disability from, in this case, entering its store without a face covering.  Because Sprouts' no-exception, Face Covering Policy is both lawful and permitted under the ADA, Plaintiff's claims fail.

The ADA expressly allows eligibility criteria where, as here, the "criteria can be shown to be necessary for the provision of the . . . services . . . being offered."  42 U.S.C. § 12182(b)(2)(A)(i); *see also* 28 C.F.R. § 36.301(a).  Specifically, the ADA's implementing regulations make it abundantly clear that while a public accommodation may not impose eligibility criteria that single out persons with disabilities for exclusion, it may impose neutral eligibility criteria as a part of the screening process:

> A public accommodation, may, however, impose neutral rules and criteria that screen out, or tend to screen out, individuals with disabilities, ***if the criteria are necessary for the safe operation of the public accommodation*** . . . Safety requirements must be based on actual risks and not on speculation, stereotypes or generalizations about individuals with disabilities.

56 Fed. Reg. 35544 (July 26, 1991) (emphasis added); codified at 28 U.S.C. § 12182(b)(2)(A)(i) & 28 C.F.R. § 36.301(b); *see also* Dep't of Justice *Tech. Ass. Manual*, III-4.1200. The Supreme Court has confirmed this rule.  *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129 (2005) ("Eligibility criteria that screen out disabled individuals are permitted when 'necessary for the provision' of the services or facilities being offered.").  Moreover, courts have recognized that

---

dismiss for untimely service, ECF No. 3.)  There is ample reason to force Plaintiff first to meet her pleading burden and then, later if necessary, her burden of proof.

legitimate, non-discriminatory reasons for imposing eligibility criteria that exclude individuals with disabilities preclude a finding of disability discrimination. *Larsen v. Carnival Corp. Inc.*, 242 F. Supp. 2d 1333, 1346 (S.D. Fl. 2003) (finding no ADA violation in decision to disembark passenger whose sleep apnea machine was not functioning, when sailing eligibility was based on ability to sail safely); *Judice v. Hosp. Serv. Dist. No. 1*, 919 F. Supp. 978, 983-985 (E.D. La. 1996) (finding no ADA violation in requiring alcoholic physician to undergo second evaluation before reinstating medical license, when requirement was based on the reasonable judgments of a medical professional, and not on general fears about alcoholics).

Here, Sprouts' Face Covering Policy is neutral on its face.  The criteria deny access to ***any*** individual who does not wear a face covering, regardless of the reason. For example, individuals who refuse to wear a face covering (or face shield) for political or religious reasons are likewise denied entry to the Store.  This neutral eligibility criterion is also "necessary" within the meaning of the statute based on overwhelming data regarding how COVID-19 spreads.  The CDC advises that COVID-19 "spreads mainly from person to person through respiratory droplets produced [which] travel into the air when [an infected person] cough[s], sneeze[s], talk[s], shout[s], or sing[s]."[2] (RJN ¶9, Ex. 7)  Face coverings are crucial because an estimated 50% of COVID-19 transmissions originate from individuals who are asymptomatic or presymptomatic, and unaware of their infectiousness to others.[3] (RJN ¶ 10, Ex. 8)  The CDC recommends that individuals wear face coverings in public settings, and advises individuals to consider mask options offering higher level of protections in situations where they are in close contact with others, such as

[2] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html
[3] *Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2,* November 20, 2020, https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html.

grocery stores.[4]  (RJN ¶ 11, Ex. 9.)  In fact, CDC Director Robert Redfield has stated that face coverings "are one of the most powerful weapons we have to slow and stop the spread of the virus – particularly when used universally within a community setting."[5]  (RJN ¶ 12, Ex. 10.)  The CDC recently supplemented its guidance to recommend the wearing of two masks to improve mask fit and filtration, particularly in situations where an individual is in close contact with others outside his or her household, such as when at the grocery store.[6]  (RJN ¶ 13, Ex. 11.)  In June 2020, California issued its own face covering mandate, recognizing scientific evidence that "use of cloth face coverings by the public during a pandemic could help reduce disease transmission."[7]  (RJN ¶ 14, Ex. 12.)  The most recent California guidance, effective November 16, 2020, mandates individuals wear face coverings at all times when outside of the home, and specifically notes that the large proportion of infected people who are asymptomatic or presymptomatic play a significant role in community spread of COVID-19.[8]  (RJN ¶ 15, Ex. 13.)  San Diego County has also issued a series of Orders of the Health Officer and Emergency Regulations, most recently updated on February 6, 2021, which require the wearing of face coverings in compliance with California's mask mandate.[9]  (RJN ¶ 16, Ex. 14.)  The version that

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/mask-fit-and-filtration.html#choosing-a-mask

[5] *See Press Release: CDC calls on Americans to wear masks to prevent COVID-19 spread,* July 14, 2020, https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html.

[6] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/mask-fit-and-filtration.html

[7] *Guidance for the Use of Face Coverings*, California Department of Public Health (June 18, 2020), https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf.

[8] *Guidance for Use of Face Coverings,* California Department of Public Health (November 16, 2020), https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/guidance-for-face-coverings.aspx.

[9] *See* Order of the Health Officer and Emergency Regulations (Effective February 6, 2021),https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/HealthOfficerOrderCOVID19.pdf

was in place at the time of Plaintiff's alleged visit on August 6, 2020 required all persons aged two years or older to wear a face covering in compliance with California's mask mandate.[10]  (RJN ¶ 17, Ex. 15.)  San Diego County has required that customers wear masks inside businesses since May 1, 2020.[11]  (RJN ¶ 18, Ex. 16.)  Even in states, like Texas, that have issued orders superseding prior orders requiring mandatory face coverings in public have nonetheless made clear in those superseding orders that business may still lawfully require face coverings.  Mar. 2, 2021 Tex. Exec. Order GA 34, ¶¶ 4 ("Nothing in this executive order precludes businesses or other establishments from requiring employees or customers to follow additional hygiene measures, including the wearing of a face covering."), 2(c)(iii) (expressly preserving trespass exception to permit businesses to enforce face covering rules).  Businesses enjoy the freedom to impose universally recognized and accepted face covering requirements.  (RJN ¶ 19, Ex. 17.)

Furthermore, not even Plaintiff alleges (nor could she) that Sprouts' Face Covering Policy renders any discrete group of persons with disabilities from shopping at its stores.  Thus, it cannot properly be characterized as an "eligibility criteri[on] that screens out … individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(i).

Moreover, Sprouts retained Lee Newman, M.D., an infectious disease expert from the University of Colorado Medical School and its Center on Health, Work &

---

[10] *See* Order of the Health Officer and Emergency Regulations (Effective July 30, 2020),https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/covid19PHOrders/PUBLIC_HEALTH_ORDER_EFFECTIVE_DATE_07.30.20_EXECUTED_DATE_07.29.20.pdf.

[11] *See* Order of the Health Officer and Emergency Regulations (Effective May 1, 2020, but since superceded), ¶ 9, https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/covid19PHOrders/PUBLIC_HEALTH_ORDER_EFFECTIVE_DATE_05.01.20_EXECUTED_DATE_04.30.20.pdf.  A complete list of the previous versions of the Orders of the Health Officer and Emergency Regulations is available at https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community/epidemiology/dc/2019-nCoV/health-order.html.

Environment, to advise on the medical efficacy of Sprouts' Face Covering Policy. Dr. Newman corroborates the validity of applying the CDC face covering guidance specifically in Sprouts' stores.  As noted by Dr. Newman, "[O]ne of our most effective tools in the workplace is to require all individuals to wear face coverings, in particular when they are likely to spend time indoors and in proximity to others." (Exhibit A to this Memorandum of Points and Authorities ("Ex. A") at 2.) Dr. Newman further opines that "due to the nature of the work at Sprouts, 6-foot distancing and physical barriers are not always feasible, hard to enforce with the public, or may be of limited effectiveness in preventing transmission in the absence of other protective measures, such as universal face coverings."  (*Id.* at 3.)

Accordingly, Sprouts' Face Covering Policy does not impermissibly rely on speculation, stereotypes, or generalizations about individuals, but is instead based on widely-known and accepted medical data and recommendations by the CDC and countless other public health agencies and medical professionals, including an infectious disease expert opinion based specifically on the nature of Sprouts' operations, as well as applicable local law.  Thus, Sprouts' eligibility criteria for entry into its stores is neutral and necessary to their safe operation and do not violate the ADA.

**C.** **Sprouts Offers Several Reasonable Modifications Of Practices, Policies, And Procedures And Auxiliary Aids And Services To Accommodate Individuals Who Cannot Wear A Face Covering Due To A Disability.**

Section 12182(b)(2)(A)(ii) requires public accommodations to "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," unless modification would fundamentally alter the service being offered.  42 U.S.C. § 12182(b)(2)(A)(ii). Similarly, except when it would fundamentally alter a public accommodation's service or result in undue burden, Section 12182(b)(2)(A)(iii) requires public

accommodations to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals *because of the absence of auxiliary aids and services*." 42 U.S.C. § 12181(b)(2)(A)(iii) (emphasis added).

Plaintiff contends that Sprouts violated these provisions by refusing to make an exception to its Face Covering Policy to allow Plaintiff to shop without a mask. (Complaint, ECF No. 1, ¶¶ 12-17.)  However, as explained above, Sprouts has offered a "reasonable modification" of its Face Covering Policy by permitting those who cannot wear a face covering to wear a face shield instead.  Plaintiff nowhere alleges that her putative disability prevents her from wearing a face shield, let alone how it does so.  *Pletcher v. Giant Eagle Inc.,* No. 2:20-754, 2020 WL 6263916, *7 (W.D. Pa. Oct. 23, 2020) (finding face shield alternative a "reasonable modification" that results in a failure of plaintiff's claims).  Indeed, this alternative appears to be sanctioned by the California guidance as well, which specifically referenced face shields as an example of a  "non-restrictive" alternative that persons who are employed in a job involving regular public contact must wear if they are unable to wear a face covering due to a medical condition.[12]  (RJN ¶ 15, Ex. 13.)  Moreover, Sprouts has fully complied with its legal duty to provide auxiliary aids and services and make reasonable modifications to its policies to accommodate persons with disabilities without fundamentally altering the nature of the public accommodation by offering three shopping alternatives for customers who will not or cannot wear a face covering.  (*See* RJN ¶ 1, Ex. 1.)  The provision of these alternatives satisfies

---

[12] *See Guidance for the Use of Face Coverings*, California Department of Public Health (November 16, 2020), https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/guidance-for-face-coverings.aspx.  The June 2020 California guidance contained a similar provision. *See Guidance for the Use of Face Coverings*, California Department of Public Health (June 18, 2020), https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf.

13                    Case No. 3:20-cv-02131-GPC-JLB
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(B)(6)

46617647_1.docx

Sprouts' obligations under the ADA, and Plaintiff does not allege that the alternatives were inadequate to afford her access Sprouts' goods or services. *See Pletcher*, 2020 WL 6263916 * 8-9.  Instead, Plaintiff states in a conclusory manner that Sprouts' curbside pickup policy "denies disabled customers full and equal access to Defendant's stores" and suggests that the alcohol is unavailable for pickup under policy, without alleging that Plaintiff had any desire to purchase alcohol during her visit to the Sprouts store.  (Complaint, ECF No. 1, ¶ 16.)  This is demonstrably false, as Sprouts' personal shopping option allows customers to purchase alcohol, and the section of Sprouts' website where customers can place online orders for pickup or delivery contains an entire tab devoted to purchasing beer and wine. (RJN ¶ 20, Ex. 18.) Therefore, Plaintiff cannot show that Sprouts failed to provide reasonable modifications to its face mask policy or auxiliary aids or services that would have allowed her to take full advantage of the public accommodation.  Accordingly, Plaintiff cannot state a plausible claim for relief under Sections 12181(b)(2)(A)(ii) and (iii) of the ADA.

### D.   Allowing An Individual Entry Into Sprouts Without A Face Covering Poses A Direct Threat To The Safety Of Both That Individual And Other Individuals In The Store.

Under the ADA, concerns for public safety may override a requested accommodation:

> Nothing in this subchapter shall require an entity to permit an individual to participate in the . . . services. . . of such entity where such individual poses a ***direct threat to the health or safety of others***.

42 U.S.C. § 12182(b)(3) (emphasis added); *see* 28 C.F.R. § 36.208.

Although the "direct threat" defense may ordinarily raise a question of genuine fact, it does not do so here, where the CDC and many other medical professionals have opined that public use of face coverings is necessary to reduce the spread of COVID-19.  *See* DOJ *Tech. Ass. Manual* § III-3.8000 ("Making this assessment will not usually require the services of a physician. Sources for medical knowledge include public health authorities, such as the U.S. Public Health Service, the Centers

for Disease Control, and the National Institutes of Health"); *Bragdon v. Abbott*, 524 U.S. 624 (1998) (holding that DOJ regulations and guidance are entitled to due deference when interpreting the ADA).  Further, an overwhelming number of states and local governments have issued mandatory face covering orders, including California.[13]  The safety concerns that support Sprouts' no-exception, Face Covering Policy are not based on disability.  On the contrary, they are based on current medical and epidemiological knowledge of how COVID-19 spreads and methods to prevent its spread.  Although the DOJ makes clear that reliance on public health authorities like the CDC is adequate to support a "direct threat" defense, as discussed above, Sprouts retained an infectious disease expert to validate and support its specific policies based on the nature of Sprouts' operation to address the "direct threat" presented by COVID-19.  (*See* Ex. A at 3 ("[C]ustomers without face coverings represent a direct threat to employees and other customers of Sprouts…").)

Thus, making exceptions to Sprouts' Face Covering Policy in its stores would not only ignore recommendations of among others, the CDC, but it would also present a direct threat to Plaintiff and to Sprouts' staff and customers.  For example, if Plaintiff was either pre-symptomatic or asymptomatic, the nature of a grocery store would almost certainly prevent appropriate physical distancing and would put every individual with whom Plaintiff came into contact at risk of contracting COVID-19.  (*See* Ex. A.)  Thus, the ADA does not require Sprouts to make Plaintiff's requested modifications because they are not reasonable and pose a serious and direct threat to the health and safety of Plaintiffs and others.  Accordingly, Sprouts' Face Covering

---

[13] The following states have issued face covering orders as of the filing of this motion: Alabama, Arkansas, California, Colorado, Connecticut, Delaware, Washington, D.C., Hawaii, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Puerto Rico, Rhode Island, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. *These States Have COVID-19 Mask Mandates,* USNews.com (March 10, 2021), https://www.usnews.com/news/best-states/articles/these-are-the-states-with-mask-mandates.

Policy is neutral, necessary to its safe operations, and does not violate the ADA.

Plaintiff attempts to argue that the fact that the CDC and California guidance set forth exemptions for "anyone who has trouble breathing" somehow means that Sprouts' face-covering policy "flies in the face" of the CDC guidelines. However, quite the opposite is true. Plaintiff's alleged (and unsupported) breathing difficulty does not lessen the possibility that COVID-19 will infect her or that she could infect others, or otherwise affect Sprouts' right to conduct a direct threat analysis under the ADA. Plaintiff has not been forced to wear a mask; she is merely required to take advantage of one of the multiple options offered by Sprouts to those who do not wish to wear masks.

## V.  PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED FOR THE SAME REASONS HER ADA DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

The second count of Plaintiff's Complaint is nothing more than a restructuring of her discrimination claims into a weak allegation of retaliation. Although Plaintiff makes the conclusory allegation that Sprouts "engaged in threats, intimidation, and interference" after she demanded to be exempt from Sprouts' face-covering policy, the actual factual allegations proffered by Plaintiff simply state that Sprouts did not permit Plaintiff to violate its face-covering policy and threatened to call the police if Plaintiff did not leave once she had made it clear that she refused to comply with the policy. (Complaint, ECF No. 1, ¶¶ 12, 36.) The circular logic that Sprouts' refusal to abandon its lawful (and necessary) policy would then constitute retaliation for the request to violate that policy is insufficient to establish an adverse action for purposes of a retaliation claim. Furthermore, as discussed above, Sprouts' lawful and rightful actions in excluding Plaintiff pursuant to its well-considered face-covering policy cannot establish a claim for retaliation.

## VI.  PLAINTIFF'S NEGLIGENCE CLAIM SHOULD BE DISMISSED BECAUSE SHE WAS NOT FORCED TO WEAR A MASK

Plaintiff concludes her Complaint with a negligence claim that appears more

afterthought than carefully-considered claim.  In order to establish a *prima facie* case of negligence, a plaintiff must plead (1) a duty of care; (2) a breach of that duty; (3) causation; and (4) actual damages.  *Winebarger v. Pennsylvania Higher Education Assistance Agency,* 411 F. Supp. 3d 1070 (S.D. Cal. 2019).   While Plaintiff conclusorily alleges that Defendant has a duty of care to Plaintiff as a business invitee, she completely fails to identify how that duty is established or how it was breached.   Plaintiff lists several examples of what she alleges to be "careless, negligent, and reckless conduct" by Defendant, most of which appear to be allegations that Plaintiff was "forced" to wear a mask and that her safety was accordingly disregarded or harmed.  (Complaint, ECF No. 1, ¶ 42.)  However, the Complaint contains no allegation that Plaintiff ever actually put on a mask; accordingly there is no support for the inflammatory allegation that Plaintiff was forced to do so.  (*Id.* ¶ 12.)  Similarly, the allegation that Sprouts "fail[ed] to maintain a safe and orderly environment" for customers by refusing to violate the face-covering policy it had adopted to protect them does not evidence a breach of any duty of care, but rather highlights Sprouts' commitment to any such duties.  Finally, Plaintiff has failed to show how any of these actions actually caused any damage to her, particularly as she does not allege that she ever actually donned a mask.

Even if Plaintiff could otherwise establish a *prima facie* case of discrimination, her negligence claim suffers from the fatal flaw that Sprouts' lawful actions in enforcing its face-covering policy to protect its employees and customers (including Plaintiff) cannot constitute negligence.

## VII.  CONCLUSION

As explained above, Plaintiff's sparse and vague assertions in his Complaint fail to allege facts sufficient to state a claim against Defendant for violations of the ADA or California law negligence principles.  Sprouts' policy requiring its customers, including Plaintiff, to wear face coverings inside the Store constitutes an

eligibility criteria that is neutral and necessary for the safe operation of the Store, and making an exception to allow Plaintiff to shop without a face covering is an unreasonable modification that would pose a direct threat to the safety of both Plaintiff and other customers in the Store.  Further, Sprouts offered auxiliary aids and services and reasonable modifications of its policy for disabled customers who cannot wear a face covering.  Accordingly, because Plaintiff has failed to establish a claim under the ADA, the Unruh Act, or state law the Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).

Respectfully submitted,

DATED:  April 1, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Amber L. Roller
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendant SF Markets, LLC (erroneously sued as Sprouts Farmers Market, Inc.)

46617647.1